JOHN ROGERS *vs.* INHABITANTS OF NEWPORT.

*Defective way. Proximate cause. R. S., c. 18, §§ 40, 46 and 65. Way—must be so passable as to be safe.*

In an action against a town for an injury on a highway caused by a snow-drift therein, the law regards the direct and not the remote cause of the injury; and if the drift alone directly caused the injury, and certain deposits of wood and cedar within the limits of the highway contributed to the formation of the drift, the wood and cedar would not be defects for which the town would be responsible, but the drift might be such a defect.

R. S., c. 18, § 46, requiring highway surveyors forthwith to make the highways within their limits "passable," when they become blocked up or incumbered with snow, does not repeal, supersede or qualify § 40 of the same chapter in respect to such highways, which requires towns to keep their ways safe and convenient for travellers, nor does it exempt towns from the liability imposed by § 65.

Highways are not only to be kept "passable," but they must be so passable that travellers may use them with safety and convenience by the exercise of ordinary care.

Rogers v. Newport.

ON EXCEPTIONS.

TRESPASS on the case to recover amount of damage sustained by plaintiff through the over-setting and breaking of his sleigh in a snow-drift, upon the highway leading from Corinna through Newport to Stetson. The location of the way, notice of its condition, such as it was, and the injury were admitted; but it was denied that there was any defect in the road, or that the plaintiff exercised due and ordinary care in driving. It appeared that there was a pile of cedar lying outside of the wrought portion of the road, but within its limits as fenced out, and a range of cord-wood, about fifty feet long, piled upon "the shoulder of the turnpiked road," extending its length four feet into that portion of the public way lying between the ditches, and dedicated to public travel. These two piles were about a rod apart. Before or since that time no drifting of snow had ever been known at that point. The accident happened on Monday. The first of the previous week there had been a snow-storm, prior to which this road had been safe and convenient, and much travelled.

The wood had been hauled and piled there within a week or two before the storm, forming a drift extending in width from the cedar to the wood-pile, and lengthwise across the whole road. The snow had not drifted for a long distance in either direction from this spot. On the next day after the storm, the highway surveyor of that district broke out the road with a common wood-sled turned over, and a log eight feet long lashed to it. When the sled struck this drift it slewed, making a curve in the travelled path around the end of the drift as left; thus, though the road was made passable for the width of eight or ten feet around this drift, it changed the direction of the travel, crowding it to the opposite side of the way.

Upon the day of the accident, Mr. Rogers was driving along southward, at a rate of about five miles an hour, in a north-east hail storm, a friend with him holding an umbrella so as to protect them. The plaintiff did not see the drift; whether prevented by the umbrella or not he did not know. He sat upon the right side

of the sleigh and the drift was on his left, extending four or five feet by the wood-pile into the road, and its end toward the road was six or eight feet wide and two feet high, by a perpendicular embankment. The sleigh-runner hit this embankment, about six inches from the edge or end, thus tipping the sleigh over, and causing the injury. From the end toward the opposite side, there was a passable road, broken out from eight to ten feet, with nothing to prevent the travel from going close to the wood the whole length of the pile. After passing this drift there was no obstruction within that portion of the road dedicated to public travel.

The plaintiff desired to have the jury instructed, that if these deposits of wood and cedar caused the drift, and the drift caused the injury, then the wood and cedar were defects for which the town would be liable, and that the road must be safe and convenient for the public travel; this instruction was refused, and the jury were told, that if the drift alone directly caused the injury, and the wood and cedar merely contributed to the formation of the drift, the week before, they should not consider the wood and cedar as in the case; and that the town would not be responsible in this action for their being there. The judge read to the jury the forty-sixth section of the eighteenth chapter of the Revised Statutes, and instructed them, that if the defendants had complied with the provisions of that section, they were not liable under the fortieth section of that chapter. To the instruction given and that refused, the plaintiff excepted.

*Lewis Barker*, for the plaintiff.

*E. Walker* and *Geo. W. Whitney*, for the defendants, cited *Moulton v. Sanford*, 51 Maine, 127; *Marble v. Worcester*, 4 Gray, 395; *Jenks v. Wilbraham*, 11 Gray, 142; *McDonald v. Snelling*, 14 Allen, 290.

DICKERSON, J. Action to recover damages for an injury to the plaintiff's sleigh, by reason of a snow-drift upon the highway of the defendants.

There was evidence in the case, that there was a pile of cedar lying outside the turnpiked portion of the road, but within the limits of the highway, and a pile of cord wood on the shoulder of the road, extending some four feet into the travelled part of it. It further appeared in evidence that a snow-drift was formed, extending from the pile of cedar to the wood pile, and thence across the road.

The learned counsel for the plaintiff requested the court to instruct the jury that if those deposits of wood and cedar caused the drift, and the drift caused the injury, the wood and cedar were defects for which the town would be liable, and that the road must be safe and convenient for travellers.

The justice presiding refused to give the requested instruction, but instructed the jury that if the drift directly caused the injury, and the wood and cedar merely contributed to the formation of the drift the week before, they should not consider the wood and cedar in the case, and that the town would not in any way be responsible in this action for their being there.

The burden was upon the plaintiff to prove, not the cause, but the existence of the defect. With the former he had nothing to do; his right to maintain this action did not depend, in any respect, upon the cedar and wood-pile. If the snow-drift which was there constituted a defect, and alone caused the injury, the rights, duties and liabilities of the town in respect to it would be the same whether the cedar and wood-pile contributed to produce it or not. The law in such cases regards proximate, not remote causes. The sleigh did not come in contact with the wood-pile, but with the snow-drift which was the proximate cause, if cause it was, of the injury. The justice presiding, therefore, properly refused to give the first branch of the requested instruction, and gave other appropriate instructions.

But the counsel for the plaintiff further requested the court to instruct the jury, that the road must be safe and convenient for the public travel. This request was not complied with, but they were instructed that if the defendants had complied with R. S., c. 18,

Rogers v. Newport.

§ 46, they were not liable under the fortieth section of the same chapter.

Section 46 provides that where the ways within the limits of a highway surveyor are blocked up or incumbered with snow, he shall forthwith cause so much of it to be removed or trodden down, as will render them "passable." Section 40 requires that highways townways and streets, legally established, shall be opened and kept in repair so that they are safe and convenient for travellers with horses, teams and carriages. Section 65 of the same chapter gives a party who receives any injury to his person, or suffers any damage in his property through any defect or want of repair in any highway, a right of action against the town obliged by law to repair the same.

Section 46 was not intended to operate as a substitute for, or a repeal of section 40 in the specified class of cases, nor to exempt towns from the liability imposed by section 65. The duty of towns "to keep their highways safe and convenient" is not conditioned upon the performance or non-performance by the surveyor of highways of the duty imposed upon him by section 46, but it is imperative. The provision in section 46 is a precautionary measure to prevent travellers from being subjected to unnecessary inconvenience and delay by reason of the way remaining impassable from a specified cause; not to shield the town from liability when it allows the way, though "passable," to remain defective, unsafe and inconvenient. It is not enough that towns make their ways passable; they may be passable when they can only be used by the exercise of extraordinary care which is a higher degree of care than the law requires. Few ways are absolutely impassable at any season of the year. Highways are not only to be made and kept "passable," but they must be so "passable" that travellers may use them with safety and convenience by the exercise of ordinary care. The terms "safe and convenient" and "passable" are not synonymous; it is obvious that a highway may be passable, and at the same time, not safe and convenient. The requested instruction that "the road must be safe and convenient for the public travel"

contains a principle of law strictly applicable to the issue, and should have been given.            *Exceptions sustained.*

WALTON and PETERS, JJ., concurred.
BARROWS and DANFORTH, JJ., concurred in the result.
APPLETON, C. J., and CUTTING, J., did not concur.